IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, TRANSPORTATION DIVISION,<br><br>Petitioner,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO.,<br><br>Defendant. | No. 1:20-CV-04318<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

This case involves two arbitration awards, one issued in favor of L.G. Collins and the other in favor of K.B. Savage. Both gentlemen are employed by Defendant Union Pacific Railroad Company ("Union Pacific"), as a conductor and an engineer, respectively, and are represented by their labor union, Petitioner Transportation Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART-TD"). SMART-TD claims Union Pacific has refused to comply with either award and, pursuant to the Railway Labor Act, seeks an order to enforce them. Am. Pet. ¶¶ 10–11, 18–19, ECF No. 11. Union Pacific now moves to dismiss the claim involving Mr. Savage for lack of subject-matter jurisdiction. For the below reasons, the motion is denied.

**RAILWAY LABOR ACT**

The Railway Labor Act (RLA) governs labor relations within the railroad industry. 45 U.S.C. §§ 151–65. It provides for the orderly settlement of labor disputes as a means to prevent interruptions of interstate commerce. *Id.* § 151a. Labor disputes within the railroad

industry are categorized into two broad classes of controversy, and the RLA deals with each category in distinct ways. *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722–23 (1945).

The first category comprises disputes over changes to "rates of pay, rules, or working conditions . . . ." 45 U.S.C. § 152 Seventh. These so-called "major disputes" relate to "the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one . . . ." *Burley*, 325 U.S. at 723. In the event of a major dispute, the RLA imposes upon the parties an elaborate procedure for negotiation, mediation, voluntary arbitration, and conciliation. *See Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 378 (1969) (summarizing the RLA's major dispute framework). Until this protracted process is exhausted, parties must maintain the status quo (*i.e.*, no strikes). *Id.* at 378–80; *see, e.g.*, 45 U.S.C. § 156 ("working conditions shall not be altered" during major disputes).[1]

The second category of disputes—and the one relevant to this case—involves disputes over the "interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . ." 45 U.S.C. § 152 Sixth. These so-called "minor disputes" relate either to "the meaning or proper application of a particular provision" within a pre-existing collective agreement. *Burley*, 325 U.S. at 723. Thus, minor disputes involve the assertion of rights claimed to have already vested, whereas major disputes pertain to the acquisition of future rights. *Id*. A dispute is considered minor if an asserted right may be "arguably justified by the terms of the parties' collective-bargaining agreement." *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 307 (1989). In the event of a minor dispute, the RLA requires the parties to negotiate

---

[1] The RLA's status quo obligation is embodied by multiple provisions, each applicable to different stages of the major dispute framework. *See* 45 U.S.C. §§ 155, 156, and 160. The district court is empowered to enjoin violations of these provisions without the customary showing of irreparable injury. *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 303 (1989).

and, if necessary, submit to compulsory arbitration before a National Railroad Adjustment Board, whose binding award settles the dispute. 45 U.S.C. § 153 First (i), (m). Parties may also establish by voluntary agreement their own special adjustment boards (known as Public Law Boards) to fulfill the RLA's arbitration requirement. 45 U.S.C. § 153 Second; 29 C.F.R. § 1207.

Awards issued by either the National Railroad Adjustment Board or a Public Law Board are final. 45 U.S.C. § 153 First (m), Second. Nonetheless, aggrieved parties may petition the district court to intervene in limited ways. A losing party may ask the court to set the award aside based on, and only on, a finding that the Board violated the RLA, exceeded the scope of its jurisdiction, or committed fraud. 45 U.S.C. § 153 First (p); *see Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (characterizing judicial review of awards under the RLA as "among the narrowest known to the law"). A prevailing party may also ask the court (assuming a carrier does not comply with an award) to enforce it. 45 U.S.C. § 153 First (p). Finally, either party may ask the court to remand the award and direct further proceedings if the award is incomplete or vague. *Id.* § 153 First (q); *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 187 (7th Cir. 1985).

## FACTUAL BACKGROUND

Union Pacific has a three-strike attendance policy. Full-time employees who violate the policy three times (with each violation occurring within three years of the preceding violation) are permanently dismissed. Ex. 2 to Powell Decl. 1–2, ECF No. 7-1. This is what happened to Mr. Savage. Union Pacific assessed Mr. Savage to be in violation of the attendance policy in March 2014, then again in April 2015, and a third time in September 2017. Powell Decl. ¶¶ 9–11, ECF No. 7-1. Union Pacific dismissed Mr. Savage on September 8, 2017. *Id.* ¶ 11.

In accordance with the RLA's minor dispute procedure and via two separate arbitration proceedings, Mr. Savage appealed. First, Mr. Savage disputed the assessment of his second

attendance policy violation. Ultimately, the National Railroad Adjustment Board found that Union Pacific was aware of but did not consider Mr. Savage's qualification under the Family and Medical Leave Act in its investigation of the absences that underpinned Mr. Savage's second violation. Ex. B. of Am. Pet. 2–3, ECF No. 11-2.[2] This, the Board concluded, was unreasonable; and so, it issued an award sustaining Mr. Savage's claim. *Id.* at 1, 3 (Award No. 29212; the "Savage Award"). The relief provided by this award is the subject of the dispute addressed in this opinion. In a second proceeding, Mr. Savage disputed the assessment of his third violation. This time, a Public Law Board found Union Pacific's assessment to be reasonable and denied Mr. Savage's claim to remove the violation. Ex. 2 to Powell Decl. 1–3, ECF No. 7-1 (Award No. 104 of Public Law Board No. 7329).

Because the Savage Award removed one of Mr. Savage's three attendance policy violations, his permanent dismissal was no longer justified under the three-strike policy; and so, Union Pacific returned him to work on July 5, 2018. Powell Decl. ¶ 14, ECF No. 7-1. In compliance with the award, Union Pacific also paid him for the time he lost while attending Union Pacific's formal investigation of his now-vacated second violation (*i.e.*, one day's wages). *Id.* ¶ 13. Additionally, Union Pacific paid Mr. Savage back pay for the time period between his dismissal and reinstatement less the compensation he received through outside employment during the same period. *Id.* ¶ 14. These actions, Mr. Savage acknowledges, fully satisfied the Savage Award save for one exception: Union Pacific's reduction of his back pay based on his outside earnings, he says, violated the Savage Award and Union Pacific's collective-bargaining agreement. Am. Pet. ¶ 18, ECF No. 11. For this reason, SMART-TD, a labor union representing

---

[2] The Family and Medical Leave Act entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons. *See* 29 U.S.C. §§ 2601–54.

4

train service employees, petitioned this Court under § 153 First (p) for enforcement of the Savage Award (*i.e.*, to collect payment of Mr. Savage's partially withheld back pay).

Union Pacific has moved to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). It claims this Court lacks jurisdiction under § 153 First (p) to enforce the Savage Award because it has fully complied with the award's clear terms or, in the alternative, because the award is ambiguous and therefore unenforceable. SMART-TD responds that Union Pacific has contravened the award's unequivocal requirement to compensate Mr. Savage for all wages and benefits lost as a result of the improper assessment of the second attendance policy violation. Mem. in Opp'n to Mot. to Dismiss 7, ECF No. 13 ("The Award sustaining Mr. Savage's claim which resulted in his reinstatement is unambiguous . . . ."). In the alternative, SMART-TD argues that if interpretation of the award is necessary, a remand under § 153 First (q) (instead of dismissal) is the proper remedy.

## DISCUSSION

When a dispute arises as to the interpretation of an arbitration award, the National Railroad Adjustment Board, upon request of either party, has a duty to interpret the award. 45 U.S.C. § 153 First (m). These interpretive disputes are themselves "minor disputes" under the RLA which "the Board must resolve without judicial aid or interference." *Bhd. of Maint. of Way Emps. v. Burlington N. R.R. Co.*, 24 F.3d 937, 938 (7th Cir. 1994). For this reason, the judicial duty to enforce an arbitration award under § 153 First (p) "is neither a duty nor a license to interpret it." *Bhd. Ry. Carmen Div. v. Atchison, Topeka & Santa Fe Ry. Co.*, 956 F.2d 156, 160 (7th Cir. 1992). Hence, the underlying interpretive question in this case—whether the Savage Award is ambiguous and therefore requires interpretation—subsumes all others.

5

The precise question presented is this: Is the Savage Award ambiguous as to whether Union Pacific may or may not reduce Mr. Savage's back pay entitlement by the amount he earned through outside employment while improperly dismissed? This is a factual, rather than facial, challenge to the court's subject matter jurisdiction and it is therefore proper to look beyond SMART-TD's allegations and weigh any evidence submitted on the matter. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). If the award is **not** ambiguous, subject-matter jurisdiction under § 153 First (p) exists to enforce the award so long as SMART-TD has sufficiently alleged a basis to conclude Union Pacific has not complied with the award's clear terms.[3] If the award *is* ambiguous, the question devolves into whether a remand under § 153 First (q) is appropriate despite a lack of subject-matter jurisdiction under § 153 First (p).

The Savage Award's literal award statement is succinct. It states: "Claim sustained." Savage Award 3, ECF No. 11-2.[4] The award statement, then, plainly incorporates the Savage

---

[3] Given that interpretive disputes regarding awards are minor disputes of which the RLA precludes judicial adjudication, the jurisdictional inquiry here hinges on a finding of ambiguity. Union Pacific's claim of ambiguity, then, is properly asserted via a Rule 12(b)(1) motion. Union Pacific's alternative claim that it has complied with the Savage Award, however, contains no jurisdictional inquiry; subject-matter jurisdiction inarguably exists under § 153 First (p) to enforce awards. Therefore, its assertion via a Rule 12(b)(1) motion is inapposite and more appropriately brought via a Rule 12(b)(6) motion. Despite this minor procedural infirmity, this Court considers the claim under the present 12(b)(1) motion for the sake of judicial efficiency. The petitioner is not prejudiced because, in this instance, the Rule 12(b)(1) and Rule 12(b)(6) standards are equivalent. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal*'s 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6).").

[4] The award is also accompanied by an order requiring "that an award favorable to the Claimant(s) be made." *Id.* Neither party suggests that this order supports their respective contentions about whether the award is ambiguous.

Award's claim statement by reference (and sustains it in its entirety).[5] The claim statement is therefore the focus of the ambiguity inquiry. It states in full:

> Claim of Seattle Engineer K B Savage for removal of a First [Second] Offense notation under Carrier's attendance policy from his personal record, **with compensation for all lost time and benefits as a result of this matter**, including but not limited to time lost while attending the Investigation, all wage equivalents to which [he is] entitled, vacation benefits, and all insurance benefits and monetary loss for such coverage while improperly disciplined.

*Id.* at 1 (emphasis added).[6]

This statement speaks in the broadest terms, awarding Mr. Savage "compensation for ***all*** lost time . . . ." *Id.* (emphasis added). It conveys no caveats, conditions, or exceptions; nor is there cause to infer any. It possesses no evidence of internal contradiction or implied terms, nor does it appear to ascribe special (rather than plain) meaning to any word or phrase. In short, it is clear.

Union Pacific contends the award must expressly disclaim back pay offsets in order to be clear. But why? The Board need not disclaim every conceivable deduction of Mr. Savage's compensation when its intended compensation is all-inclusive. Accordingly, courts routinely assume back pay offsets are not included in awards unless the Board specifically says they are. *See, e.g.*, *Auto. Mechs. Loc. 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991) ("It is settled that arbitrators have discretion to decide whether lost earnings should be offset by

---

[5] This is a common construction of sustaining awards. *See, e.g.*, *Smart Transp. Div. v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2015 WL 1593082, at *1 (N.D. Ill. Apr. 6, 2015); *Bhd. of Locomotive Eng'rs & Trainmen v. Burlington N. Santa Fe Ry. Co.*, 925 F. Supp. 2d 1252, 1256 (D. Wyo. 2013).

[6] The Savage Award's claim statement errantly refers to Mr. Savage's "First Offense" rather than his second. Savage Award 1, ECF No. 11-2. The award's findings, however, substantively address and expressly reference Mr. Savage's "Second Offense." *Id.* at 1–3. Union Pacific implicitly acknowledges that this typographical error within the claim statement is inconsequential. *See* Mem. in Supp. of Mot. to Dismiss 7, ECF No. 7.

interim earnings or a failure to mitigate, so that their silence on such issues means that no such offsets are to be made."); *Bhd. of R.R. Signalmen v. Louisville & Nashville R.R. Co.*, 688 F.2d 535, 538 (7th Cir. 1982) ("[W]e must assume that if the Board wanted the amount paid [to the employee] reduced by his sickness benefits and disability annuity, it would have said so in the award.").[7]

Union Pacific further attempts to obfuscate the award's plain meaning by arguing that the Board did not address Mr. Savage's dismissal when issuing the Savage Award. Because Mr. Savage had not yet been dismissed when he appealed his second attendance policy violation, the only "lost time" the Board could have meant, according to Union Pacific, was the time lost while attending the formal investigation of his second attendance policy violation.

Union Pacific explains that the Savage Award cannot be understood to extend to wages lost as a result of Mr. Savage's dismissal because he had not yet been dismissed when he challenged his second attendance policy violation. By the time the award was issued, however,

---

[7] Union Pacific cites a number of cases for the proposition that "[w]hen an award does not instruct on how to calculate back pay or is unclear about the payment calculation, Courts may not interpret such awards." Reply in Supp. of Mot. to Dismiss 3, ECF No. 15. Two cited cases dealt with patently deficient awards. *See Miller v. Chi. & N. W. Transp. Co.*, 1988 WL 135553, at *3 (N.D. Ill. Dec. 9, 1988) (award simply commanded parties to "[a]pply the [collective-bargaining agreement] and determine the damages"); *Johnson v. CSX Transp., Inc.*, 2011 WL 2619553, at *2 & n.2 (D. Md. June 30, 2011) (award simply commanded the carrier to make "an award favorable to [the petitioner]"). Therefore, these cases are too factually dissimilar to warrant analogy. Another case Union Pacific cites grappled with whether the common-law doctrine of mitigation applied to an award issued to compensate for lost time. *See Bhd. of R.R. Signalmen v. Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 444 F.2d 1270, 1272–73 (7th Cir. 1971). However, the railroad raised the mitigation issue for the first time in court—a permissible tactic prior to the RLA's amendment in 1966—and so there was no certainty whether the Board considered it. *Id*. Prior to 1966, "money awards" issued by the Board were not considered final and binding on the parties. *Bhd. of Locomotive Eng'rs v. Louisville & N. R.R. Co.*, 373 U.S. 33, 41 (1963). Hence, this case too is inapposite. Finally, *United Transportation Union v. Patapsco and Back Rivers Railroad Co.*, the last of Union Pacific's cited support, dealt with an award rendered ambiguous by conflicting statements issued by each of the Board's three members. *See* 327 F. Supp. 608, 613–16 (D. Md. 1971). There is no similar evidence of ambiguity here.

8

Mr. Savage had been dismissed for nine months, so Union Pacific's contention that the Board could not have contemplated lost wages due to dismissal is not a given.[8] And whether or not Mr. Savage's dismissal was known by the Board when it issued the Savage Award or whether dismissal was simply a theoretical possibility, the Board chose not to exclude from its award wages lost from a dismissal founded on the improper violation. Instead, it qualified its comprehensive grant only insofar as to require that Mr. Savage's "lost time" be "a result of this matter." Savage Award 1, ECF No. 11-2. Thus, any lost time causally connected to Mr. Savage's unreasonably assessed second attendance policy violation falls within the award's ambit. And Union Pacific concedes that Mr. Savage's dismissal resulted from this violation. *See* Mem. in Supp. of Mot. to Dismiss 9, ECF No. 7 ("[A]fter the issuance of the [Savage Award], Union Pacific voluntarily agreed to reinstate Mr. Savage. But, that was only because the effect of the [Savage Award] was to remove one of the offenses under the Attendance Policy on which the decision to dismiss him had been based.").[9]

Union Pacific's argument is rendered even more obtuse in light of the Board's elaboration that Mr. Savage's lost time "includ[es] but [is] not limited to time lost while

---

[8] Although Mr. Savage appealed his second attendance policy violation prior to receiving his third, the Board did not issue the Savage Award until nearly nine months after Union Pacific dismissed Mr. Savage. *See* Mem. in Supp. of Mot. to Dismiss 8, ECF No. 7; Powell Decl. ¶ 11, ECF No. 7-1; Savage Award 3, ECF No. 11-2. Nonetheless, the record does not reflect whether details of Mr. Savage's third violation and subsequent dismissal ever came to the Board's notice during its evaluation of Mr. Savage's second violation.

[9] Union Pacific's assertion that it "voluntarily" reinstated Mr. Savage is beside the point. The Savage Award's express terms did not require Union Pacific to reinstate Mr. Savage (this says nothing as to what Union Pacific's attendance policy and collective-bargaining agreement required it to do). What the Savage Award concerned was not reinstatement but the unreasonableness of Mr. Savage's second attendance policy violation and the compensation owed him because of that finding. As for the latter, the award required compensation for all lost time casually related to Mr. Savage's unreasonably assessed violation. Union Pacific established this causal link when it reinstated Mr. Savage **because of** the violation. It makes no casual difference whether that reinstatement was "voluntary."

attending the Investigation . . . ." Savage Award 1, ECF No. 11-2. If the Board had intended for "time lost while attending the Investigation" to be the only time Mr. Savage was to be compensated for, it would not have referenced it so clearly as an add-on.

In sum, Union Pacific must pay Mr. Savage back pay for time lost as a result of his unreasonably assessed attendance policy violation. This is the Savage Award's import, and it contains no implied offset for outside employment while impermanently dismissed. Because this import is unambiguous, subject-matter jurisdiction exists to enforce it. Union Pacific's contrary reading of the award is nothing more than a formula for evasion. It bears reminding that "[t]rivial ambiguities in arbitration awards are not a ground for refusing to enforce them—here as elsewhere, *de minimis non curat lex*—and even less so are trivial ambiguities **manufactured** by the party seeking to use them to invalidate an award." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 500 F.3d 591, 593 (7th Cir. 2007) (citations omitted; emphasis in original).

One final note: Recall that minor disputes are defined as disputes arising from the "interpretation or **application** of [collective-bargaining] agreements . . . ." 45 U.S.C. § 152 Sixth (emphasis added). Union Pacific reads this to say that courts may not cross-reference collective-bargaining agreements as means to interpret arbitration awards without implicating a separate minor dispute of which the court has no jurisdiction to adjudicate. Mem. in Supp. of Mot. to Dismiss 10, ECF No. 7. That position is untenable and—more importantly—immaterial.[10] In this

---

[10] Courts have recognized that "[t]he Board, in fashioning relief, often sets out a general principle of relief and lets the parties, or the court if necessary, apply it, filling in the details. An award is not unenforceable merely because it requires such application." *Bhd. Ry. Carmen v. Belt Ry. Co. of Chi.*, 658 F. Supp. 136, 139 (N.D. Ill. 1987). In the interest of prompt enforcement, "[t]he court can and should resolve any issues of lack of clarity . . . unless those issues implicate an area which is within the special expertise of the Board . . . ." *Id*. Accordingly, courts often use collective-bargaining agreements to substantiate awards. *See, e.g., Smart Transp. Div. v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2015 WL 1593082, at *1 (N.D. Ill. Apr. 6, 2015); *Miller v. Chi. &*

10

case, the Savage Award need not be viewed through the lens of Union Pacific's collective-bargaining agreement because it is clear on its own terms. Thus, Union Pacific's collective-bargaining agreement has yet to be referenced in this opinion. But had the Court taken such step, this case would be rendered even easier. Case in point: Union Pacific's Addendum to its Discipline Agreement, dated December 12, 2012, applies when "an employee has been dismissed from service" and explains that

> [t]he amount of pay for time lost due an employee as a result of a sustaining [National Railroad Adjustment Board or Public Law Board] Award **will not be reduced by outside earnings** during the time period the employee was out of service.

Ex. 1 to Powell Decl. 1, 3–4, ECF No. 7-1 (emphasis added).

\*   \*   \*

For the stated reasons, the Savage Award is unambiguous.[11] Therefore, subject-matter jurisdiction exists under § 153 First (p) to enforce it. The question thus turns to whether SMART-TD has alleged a basis to conclude that Union Pacific has not complied. It has. *See* Am.

---

*N. W. Transp. Co.*, 1988 WL 135553, at \*2 (N.D. Ill. Dec. 9, 1988); *United Transp. Union v. Patapsco & Back Rivers R.R. Co.*, 327 F. Supp. 608, 616 (D. Md. 1971).

[11] Because the Savage Award is unambiguous, this Court need not consider the question of whether a remand (instead of dismissal) would have been proper upon a finding of ambiguity. The Seventh Circuit, however, has spoken clearly on its preference: "If an arbitration award is too ambiguous to be enforced, as 'when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation,' the district court should if possible send the matter back to the original arbitration panel for clarification rather than put the parties to the expense of starting from scratch with a new arbitration by a new panel." *Union Pac. R.R. Co.*, 500 F.3d at 592 (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000)).

Pet. ¶ 18, ECF No. 11 ("[T]he Carrier . . . has improperly deducted outside earnings . . . ."). Union Pacific's motion is denied.

Date: March 21, 2022

/s/ John J. Tharp, Jr.

John J. Tharp, Jr.
United States District Judge